**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ )<br>LAMBDA LEGAL DEFENSE & )<br>EDUCATION FUND )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SUBSTANCE ABUSE AND )<br>MENTAL HEALTH SERVICES )<br>ADMINISTRATION, <u>et al</u>. )<br>)<br>Defendants. )<br>)<br>_____ ) | Civil Action No. 07-0458(JDB) |

<u>**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**</u>

The defendants, pursuant to Rule 56 of the Federal Rules of Civil Procedure, move the Court for summary judgment on the grounds that the undisputed facts demonstrate that the defendants are entitled to judgment as a matter of law.

In support of this motion, the defendants submit a Statement of Facts as to Which There Is No Genuine Issue, a Memorandum of Points and Authorities, the Declaration of Jeanette Hite, and a <u>Vaughn</u> Index.

Respectfully submitted,

__/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


__/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


__/s/_____
DIANE M. SULLIVAN, D. C. BAR # 12765
Assistant United States Attorney
Judiciary Center Building
555 Fourth Street, N.W.
Room E4919
Washington, D.C. 20530
(202) 514-7205

Of Counsel:
PATRICIA MANTOAN
Office of General Counsel
Department of Health
and Human Services

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                               )
LAMBDA LEGAL DEFENSE &         )
EDUCATION FUND                 )
                               )
            Plaintiff,         )
                               )
      v.                       )   Civil Action No. 07-0458(JDB)
                               )
SUBSTANCE ABUSE AND            )
MENTAL HEALTH SERVICES         )
ADMINISTRATION, et al.         )
                               )
            Defendants.        )
                               )
_____)
```

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**Introduction**

Plaintiff commenced this action on March 7, 2007 under the Freedom of Information Act, 5 U.S.C. § 552, seeking the disclosure of records related to the removal from the Substance Abuse and Mental Health Service Administration's (SAMHSA) website or webpages health information concerning lesbian, gay, bisexual and/or transgender (LGBT) people.  The defendants have provided all responsive records, except for eleven pages or portions thereof withheld under FOIA Exemptions 5 and 6.

The declaration of Jeanette S. Hite, SAMHSA's FOIA Officer, the Vaughn index and the entire record herein demonstrate that there are no material issues of fact and that the defendants are entitled to judgment as a matter of law.

**Background**

On July 24, 2006, the Lambda Legal Defense & Education Fund (Plaintiff or Lambda) sent a FOIA request to SAMHSA seeking eighteen catagories of documents relating to the removal from SAMHSA's website or webpages information containing health information relating to LGBT individuals on January 21, 2006 (Hite Declaration, ¶ 3). In July 2006, the FOIA office initiated a search for records responsive to plaintiff's FOIA request (Id., ¶ 4). The request was sent to the Office of the Executive Secretariat which is responsible for tracking correspondence to and from SAMHSA (Id.). The Executive Secretariat searched its paper and electronic files to ascertain whether it had any records, emails, or other correspondence related to "the removal of the website or web page(s) containing health information related to LGBT people" (Id.). No records were located (Id.).

The Office of the Secretariat then determined that the most appropriate office that may maintain responsive records was the Office of Communications (OC) since OC was responsible for the SAMHSA website (Id.). A search of OC for records related to the "removal on January 21, 2006 of [the] website or web page(s)." located approximately 937 pages of emails, memoranda and other related records (Id.). Another search of OC was initiated on March 20, 2007. No additional responsive records were found (Id., ¶¶ 4,7).

2

On March 23, 2007, SAMHSA released approximately 400 pages of records.  SAMHSA withheld, under Exemption 6, from those pages the names, home addresses, home telephone numbers and email addresses of private citizens who wrote to SAMHSA expressing their opinions about the SAMHSA webpage concerning LGBT people (Id., ¶ 8).  On March 30, 2007, SAMHSA released approximately 350 pages of records (Id., ¶ 9).  Again, under Exemption 6, the name, home addresses, home telephone numbers, and email addresses of private citizens who wrote SAMHSA about the website were redacted (Id.).

On April 13, 2007, SAMHSA released approximately 200 pages.  Again, pursuant to Exemption 6, the names, home addresses and telephone numbers, and email addresses of private citizens who wrote SAMHSA about the website were redacted.  In addition, information about an employee who had been terminated by the contractor that maintained the website and the contractor's home and cell phone numbers were redacted under Exemption 6 (Id., ¶ 10).  Finally, predecisional deliberations contained in the records were withheld under Exemption 5 (Id.).

In May 2007, the Office of the Executive Secretariat conducted a new search.  Specifically, that office searched its congressional files for responsive documents (Id., ¶ 11).  Approximately 125 pages of congressional correspondence was located and several additional documents were located under the

acronym "GLBT" instead of "LGBT" that was identified in plaintiff's FOIA request (Id.). The additional records were released to plaintiff on May 11, 2007 with redactions made in accordance with Exemption 5 to protect predecisional deliberations and under Exemption 6 to protect the names, home addresses and telephone number of constituents who wrote to congressional members (Id., ¶¶ 11, Ex. 7).[1]

In sum, approximately 1075 pages of documents were released. The defendants withheld information in approximately five documents consisting of eleven pages to protect predecisional advice and recommendations under Exemption 5 and information about a terminated employee of the contractor and the contractor's home and cell telephone number under Exemption 6 (Hite Declaration, ¶¶ 16-17; see also Vaughn Index, pp. 1-4). All reasonably segregable, non-exempt information was released (Id., ¶ 18; see also Vaughn Index, Exhibit 5, pp. 1-4). The defendants waived any applicable fees (Id., ¶ 9).

## Argument

### I.   Standard for Summary Judgment

FOIA cases are typically decided on motions for summary judgment. See Cappabianca v. Commissioner, United States Customers Serv., 847 F.Supp. 1558, 1562 (M.D. Fla. 1994) ("once

---

[1] The plaintiff does not contest the withholding of the information concerning private citizens who wrote to SAMHSA or to their congressional members.

documents in issue are properly identified, FOIA cases should be
handled on motions for summary judgment") (citing Miscavige v.
IRS, 2 F.3d 366, 368 (11th Cir. 1993)).  To be entitled to
summary judgment, the agency must prove that each document was
produced, not withheld, is unidentifiable, or is exempt from
disclosure. Weisberg v. United States Dept. of Justice, 627 F.2d
365, 368 (D.C. Cir. 1980).  To meet its burden, the defendant may
rely on affidavits or declarations and other evidence by the
agency which show that the documents are exempt from disclosure.
Hayden v. National Security Agency Cent. Sec. Serv., 608 F.2d
1381, 1384, 1386 (D.C. Cir. 1979), cert. denied, 446 U.S. 937
(1980); Church of Scientology v. United States Department of
Army, 611 F.2d 738, 742 (9th Cir. 1980).  Summary judgment may be
granted solely on the basis of agency affidavits [or
declarations] if they "contain reasonably detailed descriptions
of the documents and allege facts sufficient to establish that
the documents are within the FOIA exemption category; the
district court need look no further." Citizens Commission on
Human Rights v. FDA, 45 F.3d 1321, 1329 (D.C. 2000); Bowen v.FDA,
925 F.2d 1224, 1227 (9th Cir. 1991). See also Hayden, supra, 608
F.2d at 1387; Military Audit Project v. Casey, 656 F.2d 724, 738
(D.C. Cir. 1981).

These declarations or affidavits (singly or collectively)
are often referred to as a Vaughn index, after the case of Vaughn

v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977, 94 S.Ct. 1564 (1974).  There is no set formula for a Vaughn index.  It is the content, not the form which is important.  "The materials provided by the agency may take any form so long as they give the reviewing court a reasonable basis to evaluate the claim of privilege." Delaney, Midgail & Young, Chartered v. IRS, 826 F.2d 124, 128 (D.C. Cir. 1987). See also Keys v. United States Department of Justice, 830 F.2d 337, 349 (D.C. Cir. 1987); Hinton v. Department of Justice, 844 F.2d 126, 129 (3d Cir. 1988).

"Summary judgement is available to the defendant in a FOIA case, when the agency proves that it has fully discharged its obligations under FOIA." Miller v. United States Dept. of State, 779 F.2d 1378, 1382 (8th Cir. 1985.)  Agencies establish that all of their obligations under the FOIA have been met through declarations and Vaughn indexes.  Thus, when the pleadings, supplemented by affidavits or declarations, show no genuine issue as to any material fact and the defendant is entitled to judgment as a matter of law, summary judgment should be granted to the defendant. Perry v. Block, 684 F.2d 121 (D.C. Cir. 1982).

The Declaration in the instant case was prepared by Jeanette S. Hite, the Freedom of Information Officer for SAMHSA, Department of Health and Human Services (HHS) (Hite Decl., ¶ 1). As part of her duties, Ms. Hite responds to requests for SAMHSA

records under FOIA.  She is responsible for determining whether
to release or withhold records or portions of records under FOIA
and implementing regulations (<u>Id</u>.).  As a result, Ms. Hite is
familiar with the handling of plaintiff's FOIA request to SAMHSA
(<u>Id</u>., ¶ 2-3.)  Ms. Hite's declaration adequately sets forth the
steps taken by SAMHSA to locate records responsive to the
plaintiff's request and the factual basis to establish that the
documents or portions thereof are properly withheld under FOIA
Exemptions 5 and 6.  The defendants have discharged their
obligations under FOIA.

## II.  <u>The Defendants Conducted an Adequate Search</u>

SAMHSA performed an adequate search in response to
plaintiff's FOIA request.  In responding to a FOIA request an
agency is under a duty to conduct a reasonable search for
responsive records.  <u>Oglesby v. United Sates Department of Army</u>,
920 F.2d 57, 68 (D.C. Cir. 1990); <u>Cleary, Gottlieb, Steen &
Hamilton v. Dep't of Health, et al</u>., 844 F. Supp. 770, 776
(D.D.C. 1993); <u>Weisberg v. United States Department of Justice</u>,
705 F.2d 1344, 1352 (D.C. Cir. 1983).  This "reasonableness"
standard focuses on the method of the search, not its results, so
that a search is not unreasonable simply because it fails to
produce relevant material. <u>Weisberg</u>, 844 F.Supp. at 777 n.4.

The search standards under the FOIA do not place upon the
agency a requirement that it prove that all responsive documents

have been located. <u>Nation Magazine v. United States Customs Serv</u>., 71 F.3d 885, 892 n.7 (D.C. Cir. 1995).  It has been held that "'the search need only be reasonable; it does not have to be exhaustive.'" <u>Miller v. Department of State</u>, 779 F.2d 1378, 1383 (8th Cir. 1985) citing <u>National Cable Television Association v. FCC</u>, 479 F.2d 183, 186 (D.C. Cir. 1973.  An agency is not required to search every record system, but need only search those systems in which it believes responsive records are likely to be located. <u>Oglesby</u>, 920 F.2d at 68.  Even when a requested document indisputably exists or once existed, summary judgment will not be defeated by an unsuccessful search for the document so long as the search was diligent. <u>Nation Magazine</u>, 71 F.3d at 892 n.7.  Additionally, the mere fact that a document once existed does not mean that it now exists; nor does the fact that an agency created a document necessarily imply that the agency has retained it. <u>Maynard v. CIA</u>, 982 F.2d 546, 564 (1st Cir. 1993).  Simply stated, the adequacy of the search is "dependent upon the circumstances of the case." <u>Truitt v. Department of State</u>, 897 F.2d 540, 542 (D.C. Cir. 1990).  The fundamental question is not "whether there might exist any other documents responsive to the request, but rather whether the search for those documents was adequate." <u>Steinberg v. Department of Justice</u>, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting <u>Weisberg v. Department of Justice</u>, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

8

The burden rests with the agency to establish that it has "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." Oglesby, 920 F.2d at 68; see SafeCard Servs. v. SEC, 926 F.2d 1197, 1201 (D.C. Cir. 1991). "An agency may prove the reasonableness of its search through affidavits of responsible agency officials so long as the affidavits are relatively detailed, non-conclusory and submitted in good faith." Miller, 779 F.2d at 1383; Goland, 607 F.2d at 352. Though the "affidavits submitted by an agency are 'accorded a presumption of good faith,'" Carney v. Department of Justice, 19 F.3d 807, 812 (2d Cir. 1994), cert. denied, 513 U.S. 823 (1994) (quoting SafeCard Servs. v. SEC, 926 F.2d at 1200), the burden rests with the agency to demonstrate the adequacy of its search. Once the agency has met this burden through a showing of convincing evidence, then the burden shifts to the requester to rebut the evidence by a showing of bad faith on the part of the agency. Miller, 779 F.2d at 1383. It is insufficient for a requester to attempt to rebut agency affidavits with purely speculative claims. See Carney, 19 F.3d at 813; SafeCard, 926 at 1200; Maynard v. CIA, 986 F.2d 547, 559-560 (1st Cir. 1993).

Plaintiff's FOIA request was initially forwarded to the Office of the Executive Secretariat within the Office of the Administrator for SAMHSA, which is responsible for tracking

9

correspondence sent to and from SAMHSA (Hite Decl., ¶ 4).  The Executive Secretariat searched its paper and electronic files for documents related to the website containing information responsive to plaintiff's request (Hite Decl., ¶ 4).  Finding no responsive documents, the Office of Communications that is responsible for the SAMHSA website, searched both their electronic and paper files for responsive documents (Id., ¶ 3). 937 pages were located.  The Executive Secretariat and the Office of Communications were the most likely locations to have responsive documents. Id.  A second search of the Office of Communications located no additional records (Id., ¶ 6).  A second search of the Office of the Executive Secretariat's congressional files located 125 pages of congressional correspondence and several additional documents were located under the acronym "GLBT" instead of the acronym "LGBT" identified by plaintiff (Id., ¶ 10).

SAMHSA conducted a reasonable search for records in the locations where the records were most likely to be found (Hite Decl., ¶ 4).  The affidavit submitted by SAMHSA sets forth the methods employed in the search for responsive documents.  The affidavit is detailed in nature and provides an adequate outline of the procedures followed by SAMHSA in searching for documents responsive to plaintiff's FOIA request.

III. **Exemption 5 Was Properly Invoked**.

Exemption 5 of the FOIA protects from mandatory disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). The courts have interpreted Exemption 5 as covering all records that would normally be privileged in civil discovery, see, e.g., NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975), including those covered by the deliberative process privilege, see, e.g., Wolfe v. HHS, 839 F.2d 768, 773 (D.C. Cir. 1988) (en banc), and the attorney-client privilege, see, e.g., Sears, 421 U.S. at 154; Mead Data Central, Inc. v. U.S. Dep't of the Air Force, 566 F.2d 242, 253 (D.C. Cir. 1977).

The threshold requirement under Exemption 5 is that records be "inter-agency or intra-agency memorandums." All the withheld documents under Exemption 5 fall into two categories: intra-agency documents, and documents related to exchanges between SAMHSA and a private contractor responsible for maintaining the website.  As to the first category, records created by a government agency and circulated within that agency, or between that agency and other agencies, manifestly meet this threshold requirement. See, e.g., Ryan v. U.S. Dep't of Justice, 617 F.2d 781, 790 (D.C. Cir. 1980).  The last category of documents, those exchanged between defendant and a private

11

contractor or generated in preparation for a telephone conference between SAMHSA and the contractor meet the threshold requirement as well. These records were exchanged between defendant and a private contractor in the course of the contractor's performance of his contract of  maintaining the SAMHSA website or prepared in anticipation of discussing issues related to the website and the contractor (See Hite Decl., ¶ 14(a)).  The contractor was asked to provide the defendant with its opinion on the content of the website and how to respond to a press inquiry about the website (Hite Decl., ¶ 14(a)).

    Under applicable case law, it is well established that certain records exchanged between an agency and an outside party can also meet the threshold requirements of the Exemption 5 threshold. As the Court of Appeals for this Circuit has noted, "Congress apparently did not intend 'inter-agency or intra-agency' to be rigidly exclusive terms." Ryan, 617 F.2d at 790. This flexible approach is due largely to the fact that on occasion agencies, in the performance of their duties, have "a special need for the opinions and recommendations of temporary consultants." Soucie v. David, 448 F.2d 1067, 1078 n.44 (D.C. Cir. 1971); see also, e.g., Hoover v. U.S. Dep't of the Interior, 611 F.2d 1132, 1138 (5th Cir. 1980); Wu v. Nat'l Endowment for the Humanities, 460 F.2d 1030, 1032 (5th Cir. 1972). Contractors, such as the one involved here, fall within this

12

category. See, e.g., <u>Citizens Progressive Alliance v. U.S.
Bureau of Indian Affairs</u>, 241 F. Supp. 2d 1342, 1355 (D.N.M
2002)(protesting recommendations provided by private company held
by BIA); <u>Nat'l Institute of Military Justice v. DOD</u>, 404 F. Supp.
325, 345 (D.D.C. 2005)(no requirement that outside consultant
possess expertise not possessed by those inside agency).

To be sure, in <u>Department of the Interior v. Klamath Water
Users Protective Ass'n</u>, the Supreme Court ruled that an outside
party could not qualify as a "consultant" under the Exemption 5
threshold if the outside party was seeking a government benefit
at the expense of other parties. See <u>Klamath</u>, 532 U.S. 1, 12
(2001). Here, however, the contractor is not such an interested
party. Instead, the contractor "was relied on solely for the
purposes of providing its expert opinion" and "was not soliciting
additional government business, nor was it seeking a government
benefit at the expense of other parties" (Hite Decl., ¶ 14(a)).
Indeed, the contractor in this case was simply providing its
neutral, expert advice in order to aid the agency's decision
making (<u>Id</u>.). See also <u>Formaldehyde Institute v. HHS</u>, 889 F.2d
1118, 1123-24 (D.C. Cir. 1989). This is precisely the sort of
outside consultant that has been included under the flexible
approach to the Exemption 5 threshold traditionally taken by
courts in this and other circuits in cases such as <u>Ryan</u>, <u>Hoover</u>,
<u>Formaldehyde Institute</u>, and <u>Wu</u>.

13

The handwritten notes of the Director of the Office of Communications, which were written to himself in preparation for a meeting concerning the maintenance of the website before any decision concerning the website was taken, also are protected by Exemption 5 (Id., ¶ 14(b)).  Although these notes were not circulated within the agency, they nevertheless qualify for protection under Exemption 5. See Judicial Watch v. Dep't. of Justice, 102 F. Supp. 2d 6, 13 (D.D.C. 2000).  Documents prepared by the Director of the Office of Communications as part of his deliberations and decision making are properly exempt under Exemption 5.  As the Court in Judicial Watch noted " . . . the involvement of a second person is not a sine qua non for a document to have "deliberate status under exemption five." 102 F. Supp. At 14.  Rather, a document comes within the privilege when it is "actually related to the process by which policies are formulated and decisions are made." Judicial Watch, 102 F. Supp. 14, citing Poll v. United States Office of Special Counsel, 1999 WL 820241 * 3 (10th Cir. 1999)(quoting Grand Central Partnership v. Cuomo, 166 F.3d 473, 482 (2nd Cir. 1999).

The remainder of the documents withheld are intra-agency documents containing advice and recommendations about and in advance of a meeting with the National Institutes of Health concerning the website and a response to Representative Tammy

Baldwin (Hite Decl., ¶ 14(c)  and (d)).  Thus, the documents
withheld meet the threshold requirement for Exemption 5.

The deliberative process privilege protects the government's
internal decision making process by preserving the
confidentiality of opinions, recommendations, and deliberations
underlying government decisions and policies. See Jordan v. Dep't
of Justice, 591 F.2d 753, 772 (D.C. Cir. 1978) (en banc). The
purpose of Exemption 5's deliberative process privilege is to
"prevent injury to the quality of agency decisions," Sears, 421
U.S. at 150-51, by encouraging agency employees to express their
opinions frankly, without any inhibiting fear of publicity, see
Bureau of Nat'l Affairs, Inc. v. Dep't of Justice, 742 F.2d 1484,
1497 (D.C. Cir. 1984). Thus, "[t]he privilege . . . covers
recommendations, draft documents, proposals, suggestions, and
other subjective documents which reflect the personal opinions of
the writer rather than the policy of the agency." Coastal States
Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980).

For information to properly be withheld pursuant to the
deliberative process privilege under Exemption 5, the
communications must be both "predecisional," (i.e., "antecedent
to the adoption of an agency policy," Jordan, 591 F.2d at 774),
and "deliberative" (i.e., "recommend[ing] or express[ing]
opinions on legal or policy matters," Vaughn v. Rosen, 523 F.2d

15

1136, 1143-44 (D.C. Cir. 1975)). The documents (or redactions) withheld under Exemption 5 in this case satisfy both of these requirements, as is made clear by the <u>Vaughn</u> Index and the declaration.  As to the first part of this standard, the withheld documents were created while defendant SAMHSA was engaged in the process of reaching final decisions on issues related to the subject of plaintiff's request, the SAMHSA website and web page(s) related to the health issues of LGBT people (<u>See</u> Hite Decl., ¶¶ 3-4). The declaration and <u>Vaughn</u> Index clearly attest to the fact that the withheld materials reflect discussions that took place prior to the final agency decisions on this issue (<u>Id</u>.).[2]

The documents were withheld in full or in part because they contained opinions, analysis and recommendations related to the topic of the website pertaining to LGBT (<u>See id</u>., ¶ 14). Once again, such documents are precisely the sorts of documents meant to be protected by Exemption 5 through the deliberative process privilege. As the Supreme Court has observed, the privilege applies to documents which "reflect[] advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." <u>NLRB v. Sears, Roebuck & Co</u>., 421 U.S. 132, 150

---

[2] SAMHSA released to plaintiff documents that reflect the final agency decision on the website (Hite Decl., Exhibit 9).

(1975) (internal citation omitted).

In explaining why it is necessary to protect documents of this nature from release, the District of Columbia Circuit noted that their release would "stifle honest and frank communication within the agency." Coastal States, 617 F.2d at 686. As noted in the Hite Declaration, the information withheld "would result in an intrusion into the decision making process of the agency" and "discourage candid discussion within the agency" (Hite Decl., ¶ 15). Moreover, release of the information would be a deterrent to future exchanges of frank opinions if individuals feared public disclosure (Id.).

Because the documents withheld by defendants were inter-agency or intra-agency documents that contained deliberative, predecisional communications, they qualify for protection under Exemption 5 of the FOIA. As such, the decision to withhold these documents from plaintiff was entirely appropriate.

## IV. **Exemption (b)(6) Was Properly Invoked**

Exemption 6 permits the government to withhold all information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute an unwarranted invasion of personal privacy." See 5 U.S.C. § 552(b)(6). The threshold issue to be determined in the application of Exemption 6 was firmly established in Dep't of

17

State v. Washington Post Co., 456 U.S. 595 (1982). The Supreme
Court made clear that all information that "applies to a
particular individual" meets the threshold requirement for
protection under Exemption 6 (Id. at 602). Here, the information
withheld consists of information about a terminated employee of
the contractor that maintained the SAMHSA website and the
contractor's cell and home phone numbers (Hite Decl., ¶¶ 16, 17).
 Therefore, these documents meet the threshold requirement for
protection under Exemption 6. See Washington Post Co., 456 U.S.
at 602.

     "The next step under Exemption 6 involves identifying the
relevant privacy interests in non-disclosure and the public
interests in disclosure, and determining 'whether, on balance,
disclosure would work a clearly unwarranted invasion of personal
privacy.'" Reed v. NLRB, 927 F.2d 1249, 1251 (D.C. Cir. 1991)
(quoting Nat'l Ass'n Retired Fed. Employees v. Horner, 879 F.2d
873, 875 (D.C. Cir. 1989), cert. denied, 494 U.S. 1078 (1990)).
"'The phrase 'clearly unwarranted invasion of personal privacy'
enunciates a policy that will involve a balancing of interests
between the protection of an individual's private affairs from
unnecessary public scrutiny, and the preservation of the public's
right to governmental information.'" Dep't of Air Force v. Rose,
425 U.S. 352, 372 (1976).

The employee of the contractor clearly has a privacy interest in the circumstances surrounding his or her termination from employment.  Similarly, the contractor has a privacy interest in not disclosing his home phone numbers or cell phone number.  This information, if disclosed, has the potential to cause embarrassment or be misused (Hite Decl., ¶ 17).

In this case, no overriding public interest requires the disclosure of the name of, or other information about the terminated employee of the contractor or the home and cell phone number of the contractor (Hite Decl., ¶ 17).  Plaintiff does not (nor could it) demonstrate any public interest for this type of information to be disclosed or explain how disclosure would shed light on the operations of SAMHSA (Id.).  The information is properly exempt under FOIA Exemption (b)(6).

### K.    The Defendants Disclosed All Reasonably Segregable Portions of Records

The FOIA requires that if a record contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions." 5 U.S.C. § 552(b); Mead Data Cent., Inc. v. U.S. Dept. of the Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977).  The District of Columbia Circuit has held that a district court considering a FOIA action has "an affirmative duty to consider the segregability issue sua sponte."

<u>Trans-Pacific Policing Agreement v. U.S. Customs Service</u>, 177
F.3d 1022, 1028 (D.C. Cir. 1999).

Here, SAMHSA has met its segregability obligations. First,
the agency has set forth in Jeanette Hite's sworn declaration
that the documents have been reviewed for segregability and that
most of the documents were being released with the exception of a
very limited number of documents withheld in full or in part
(Hite Decl., ¶ 18). Both the volume of the documents released
and the limited number of documents withheld and the limited
redactions made in those released in part also speak to the issue
of segregability (<u>Id</u>. at ¶ 18; <u>see also</u> <u>Vaughn</u> Index). The
<u>Vaughn</u> index addresses the documents which were withheld in full
and documents which were withheld in part (<u>Id</u>.). In sum, the
declaration and <u>Vaughn</u> index adequately demonstrate that all
reasonably segregable, non-exempt information has been disclosed.

20

Respectfully submitted,

__/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


__/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


__/s/_____
DIANE M. SULLIVAN, D. C. BAR # 12765
Assistant United States Attorney
Judiciary Center Building
555 Fourth Street, N.W.
Room E4919
Washington, D.C. 20530
(202) 514-7205

Of Counsel:
PATRICIA MANTOAN
Office of General Counsel
Department of Health
and Human Services

21

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| _____ ) | |
| LAMBDA LEGAL DEFENSE & ) | |
| EDUCATION FUND ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 07-0458(JDB) |
| ) | |
| SUBSTANCE ABUSE AND ) | |
| MENTAL HEALTH SERVICES ) | |
| ADMINISTRATION, <u>et</u> <u>al</u>. ) | |
| ) | |
| Defendants. ) | |
| ) | |
| _____ ) | |

**<u>DEFENDANTS' STATEMENT OF FACTS AS TO</u>
<u>WHICH THERE IS NO GENUINE ISSUE</u>**

The defendants, in accordance with Local rule 7(h), submit the following Statement of Facts as to Which There Is No Genuine Issue:

1.    Plaintiff sent to the Substance Abuse and Mental Health Services Administration (SAMHSA), a FOIA request, dated July 24, 2006.  The request sought eighteen categories of documents related to the removal, on or about January 21, 2006, of the SAMHSA website or webpage(s) containing health information related to lesbian, gay, bisexual, and/or transgender (LGBT) people.  The request also sought a fee waiver (<u>See</u> Hite Declaration, ¶ 3, Ex. 1).

2.    On or about July 31, 2006, the FOIA Office for SAMHSA initiated a search for records responsive to the plaintiff's FOIA request.  The request was sent to the Director of the SAMHSA

Office of the Executive Secretariat to distribute to the appropriate SAMHSA office(s) that should be searched for pertinent records. The Office of the Executive Secretariat is within the Office of the Administrator for SAMHSA and tracks correspondence sent to and from SAMHSA. The Office of the Executive Secretariat searched its paper and electronic files to ascertain whether it had documents, emails, or other correspondence related to "the removal of the web site or web page(s) containing health information related to LGBT people" (Hite Declaration, ¶ 4). The electronic system searched was the Automated Correspondence Control System (ACCS). This system contains all general electronic files of correspondence handled by the Office of the Executive Secretariat. A search of the ACCS found no pertinent documents. The hard copy paper files of the Executive Secretariat were also searched. No records were located (Hite Declaration, ¶ 4).

   3.   The Office of the Executive Secretariat determined that the most appropriate SAMHSA Office to maintain responsive records would be the Office of Communications (OC), because these types of requested records could be part of directives pertaining to the OC since the OC is responsible for the SAMHSA website. The OC is within the Office of the Administrator for SAMHSA (Id.). The Director of the OC searched his files and requested that relevant staff, including him, perform searches of both

electronic and paper files.  OC staff were asked to ascertain whether or not they had documents, emails, congressional correspondence, or other correspondence related to the "removal on January 21, 2006 of website or web page(s)" (Id.).  The search of the OC located approximately 937 pages of emails, memoranda, and other related records.  The Office of the Executive Secretariat and the OC were the likely locations in SAMHSA for responsive records (Id.).

4.    SAMHSA sent a letter, dated July 31, 2006, to the plaintiff.  This letter acknowledged receipt of the request on July 31, 2006 and informed the plaintiff that the appropriate office(s) in SAMHSA were asked to send responsive records to the SAMHSA FOIA Office for review.   The letter explained that FOIA processing charges would be made, if applicable, and informed the requester that may contact the SAMHSA FOIA Office in 20 working days to find out the status of the request (Hite Declaration, ¶ 5, Ex. 2).

5.    SAMHSA received an August 30, 2006 letter from the plaintiff, asking about the status of the request (Id. ¶ 6, Ex. 3).  A response from the FOIA Office to this letter was not found (Id.).

6.    Due to the delay in responding to plaintiff's request, SAMHSA initiated a new search of the OC on March 20, 2007.   No additional records were found (Hite Declaration, ¶ 7).

7.    On March 23, 2007 a partial response to the FOIA request was provided.  Approximately 400 pages of records were released.  Pursuant to FOIA Exemption 6, names, home telephone numbers, personal email addresses, and home addresses of private citizens who wrote to SAMHSA, expressing opinions about the SAMHSA webpage concerning LGBT people were withheld (Hite Declaration, ¶ 8, Ex. 4).

8.    On March 30, 2007, a second partial response to the FOIA request was provided.  Approximately 350 pages of records were released.  Pursuant to FOIA Exemption 6, names, home telephone numbers, personal email addresses, and home addresses of private citizens who wrote to SAMHSA, expressing opinions about the SAMHSA webpage concerning LGBT people were withheld. At that time, fees were all waived for processing plaintiff's FOIA request (Hite Declaration, ¶ 9, Ex. 5).

9.    On April 13, 2007, a final response to the FOIA request was provided.  Approximately 200 pages of records were released. Pursuant to FOIA Exemption 6, names, home telephone numbers, personal email addresses, and home addresses of private citizens who wrote to SAMHSA, expressing opinions about the SAMHSA webpage concerning LGBT people were withheld.  Also withheld under Exemption 6 was information about an employee terminated by the contractor that maintained the SAMHSA website and the contractor's home and cell phone numbers.  Pursuant to FOIA

4

Exemption 5's deliberative process privilege, SAMHSA withheld information that contained predecisional deliberations (Hite Declaration, ¶ 4, Ex. 10).

10.  After the April 13, 2007 agency response to plaintiff's FOIA request, the SAMHSA Office of the Executive Secretariat performed a new search for responsive documents.  Specifically, that office searched its congressional files for responsive documents.  The Office of the Executive Secretariat found 125 pages of congressional correspondence.  Several additional documents were located under the acronym "GLBT" instead of the "LGBT" that was given to SAMHSA in the FOIA request (Hite Declaration, ¶ 11).  SAMHSA released those records, with minor redactions, in a supplemental response, dated May 11, 2007.  The redactions were made under FOIA Exemption 5 to protect predecisional deliberations and under Exemption 6 to protect names, home addresses, and home telephone numbers of constituents who wrote to congressional members (Hite Declaration, ¶ 11, Ex. 7).

11.  A Vaughn index was prepared that describes the challenged withholdings.  The Vaughn index, accurately describes the withholdings (Hite Declaration, ¶ 12; see Vaughn Index, Exhibits).

12.  5 U.S.C. § 552(b)(5) protects internal communications that are predecisional and contain staff advice, opinions, and

recommendations, which are part of the agency's deliberative decisionmaking process.  In this case, SAMHSA withheld predecisional advice, opinions, or recommendations from five documents (Hite Declaration, ¶ 14):

a.  In the first document, advice provided to SAMHSA by the contractor, who maintained the SAMHSA website, regarding the website and the webpage concerning LGBT people was withheld.  The contractor gave his advice to assist SAMHSA in deciding the content of its website and how to respond to a press inquiry about the website.  The advice was not meant to solicit website business from SAMHSA at the expense of competing contractors (Hite Declaration, ¶ 14(a)).

b.  The second document withheld under Exemption 5 contained the SAMHSA Office of Communications (OC) Director's handwritten notes to himself.  The notes they were designed to prepare him for a telephone call he would make to the president of the contracting-company that maintained the SAMHSA website. The notes were a reminder to the OC Director of specific issues that needed to be discussed concerning his views of the contractor's maintenance of the SAMHSA website and about an employee of the contractor.  The OC Director did not circulate these personal notes

until the search for records concerning this FOIA
request.  This document contained the author's thought
processes and recommendations and edits to himself
about what issues to address with the president of the
company maintaining the SAMHSA website (Id.,
Declaration, ¶ 14(b)).

c.  The third document was partially redacted to remove
a SAMHSA employee's advice and recommendations about
negotiations with two components of the National
Institutes of Health for a possible Memorandum of
Understanding between those components and SAMHSA.  The
LGBT Pride website was located in the National
Clearinghouse for Alcohol and Drug website funded by
SAMHSA.  Advice was given regarding the use of a
clearinghouse and about whom from the agency should
attend the next management meeting about the
clearinghouse (Id., ¶ 14(c)).

d.  The fourth and fifth documents that were partially
redacted under the deliberative process privilege
contain the same two sentences which disclose advice
and recommendations about a proposed agency response to
Representative Baldwin, who wrote to Secretary Leavitt,
objecting to a decision made by SAMHSA to remove a
website concerning LGBT people.

7

13.  5 U.S.C. § 552(b)(6) exempts from disclosure: "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  In each instance where information was withheld pursuant to Exemption 6, each piece of information applied to a particular individual.  As set forth in the Vaughn index, the information withheld consists of information about a terminated employee of the contractor that maintained the SAMHSA website and a contractor's home and cell phone numbers (Hite Declaration, ¶ 16).  In each instance where information was withheld, the individual had a privacy interest in the information being withheld pursuant to Exemption 6.  Disclosure of this information would constitute an invasion of privacy of a terminated employee of a contractor and a current employee of a contractor.  In addition, the public interest in the disclosure of the redacted information was examined.  It was determined that the individual's privacy interests outweighed any public interest in disclosure of the withheld information (Id., ¶ 17).

15.  Each of the responsive records was reviewed for segregability, and all reasonably segregable, non-exempt information has been released.  A segregability analysis is noted for each document listed in the Vaughn index.  For the one fully withheld document, there was no reasonably segregable non-exempt

information in the document.  Attempts to redact the document

left meaningless words and phrases (Hite Declaration, ¶ 18).

Respectfully submitted,

__/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


__/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


__/s/_____
DIANE M. SULLIVAN, D. C. BAR # 12765
Assistant United States Attorney
Judiciary Center Building
555 Fourth Street, N.W.
Room E4919
Washington, D.C. 20530
(202) 514-7205

Of Counsel:
PATRICIA MANTOAN
Office of General Counsel
Department of Health
and Human Services

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LAMBDA LEGAL DEFENSE     )
EDUCATION FUND,     )
    )
    Plaintiff,     )
    )
    v.     )    Civil Action No. 07-0458 (JDB)
    )
SUBSTANCE ABUSE AND MENTAL     )
HEALTH SERVICES ADMINISTRATION,)
ET AL.,     )
    )
    Defendants.     )
_____)

## DECLARATION OF JEANETTE S. HITE

I, Jeanette S. Hite, declare as follows:

1. I am the Freedom of Information Act (FOIA) Officer for the Substance Abuse and

Mental Health Services Administration (SAMHSA), Department of Health and Human Services

(HHS). My duties include responding to requests under the FOIA for SAMHSA records. My

duties also include determining whether to release or withhold records or portions of records in

accordance with the FOIA and HHS regulations implementing the FOIA, and overseeing all

FOIA activities within SAMHSA. I have served in this position since May 5, 2003.

2. I make this declaration based upon my personal knowledge and information available

to me in my official capacity.

3. Plaintiff sent SAMHSA a FOIA request, dated July 24, 2006. The request sought

eighteen categories of documents related to the removal, on or around January 21, 2006, of the

SAMHSA website or webpage(s) containing health information related to lesbian, gay, bisexual,

and/or transgender (LGBT) people. The request also sought a fee waiver. See Ex. 1.

4. On or around July 31, 2006, my office initiated a search for records responsive to the FOIA request. As is my practice, I sent the request to the Director of the SAMHSA Office of the Executive Secretariat to distribute to the appropriate SAMHSA office(s) that should be searched for pertinent records. The Office of the Executive Secretariat is within the Office of the Administrator for SAMHSA and tracks correspondence sent to and from SAMHSA. The Office of the Executive Secretariat searched its paper and electronic files to ascertain whether it had documents, emails, or other correspondence related to "the removal of the web site or web page(s) containing health information related to LGBT people." The electronic system searched was the Automated Correspondence Control System (ACCS). This system contains all general electronic files of correspondence handled by the Office of the Executive Secretariat. A search of the ACCS determined there were no pertinent documents located. The hard copy paper files of the Executive Secretariat were also searched. No records were located. The Office of the Executive Secretariat determined that the most appropriate SAMHSA Office to maintain responsive records would be the Office of Communications (OC), because these types of requested records could be part of directives pertaining to the OC since the OC is responsible for the SAMHSA website. The OC is within the Office of the Administrator for SAMHSA. The Director of the OC requested that relevant staff, including him, perform searches of both electronic and paper files. OC staff were asked to ascertain whether or not they had documents, emails, congressional correspondence, or other correspondence related to the "removal on January 21, 2006 of website or web page(s)." The search of the OC located approximately 937 pages of emails, memoranda, and other related records. The Office of the Executive Secretariat and the OC were the likely locations in SAMHSA for responsive records.

5. My office sent a letter, dated July 31, 2006, to the requester. This letter acknowledged receipt of the request on July 31, 2006 and informed the requester that the appropriate office(s) in SAMHSA were asked to send the requested records to the SAMHSA FOIA Office for review. The letter explained that FOIA processing charges would be made, if applicable, and informed the requester that she may contact the SAMHSA FOIA Office in 20 working days to find out the status of the request. <u>See</u> Ex. 2.

6. We received an August 30, 2006 letter from the requester, asking about the status of the request. <u>See</u> Ex. 3. I could not find a response from my office to this letter.

7. Due to the delay in responding to this request, I initiated a new search of the OC on March 20, 2007. No additional records were found.

8. I provided a partial response to the FOIA request in a letter, dated March 23, 2007. We released approximately 400 pages of records. Pursuant to FOIA Exemption 6, we withheld from those pages names, home telephone numbers, personal email addresses, and home addresses of private citizens who wrote to SAMHSA, expressing opinions about the SAMHSA webpage concerning LGBT people. <u>See</u> Ex. 4.

9. I provided a second partial response to the FOIA request in a letter, dated March 30, 2007. We released approximately 350 pages of records. Pursuant to FOIA Exemption 6, we withheld from those pages names, home telephone numbers, personal email addresses, and home addresses of private citizens who wrote to SAMHSA, expressing opinions about the SAMHSA webpage concerning LGBT people. Fees were waived for this request. <u>See</u> Ex. 5.

10. I provided a final response to the FOIA request in a letter, dated April 13, 2007. We released approximately 200 pages of records. Pursuant to FOIA Exemption 6, we withheld from

those pages names, home telephone numbers, personal email addresses, and home addresses of private citizens who wrote to SAMHSA, expressing opinions about the SAMHSA webpage concerning LGBT people. We also withheld under Exemption 6 information about an employee terminated by the contractor that maintained the SAMHSA website and a contractor's home and cell phone numbers. Pursuant to FOIA Exemption 5's deliberative process privilege, we withheld predecisional deliberations. See Ex. 6.

11. Between the time of the final agency response and the execution of this declaration, the SAMHSA Office of the Executive Secretariat performed a new search for responsive documents. Specifically, that office searched its congressional files for responsive documents. The Office of the Executive Secretariat found 125 pages of congressional correspondence. Several additional documents were located under the acronym "GLBT" instead of "LGBT" that was given to us in the FOIA request. I released those records, with minor redactions, in a supplemental response, dated May 11, 2007. The redactions were made under FOIA Exemption 5 to protect predecisional deliberations and under Exemption 6 to protect names, home addresses, and home telephone numbers of constituents who wrote to congressional members. See Ex. 7.

12. HHS staff has prepared a Vaughn index that describes the challenged withholdings. I understand that plaintiff will not challenge the Exemption 6 withholdings of names, home telephone numbers, home email addresses, and home addresses of persons who wrote to SAMHSA and to congressional members to express opinions about SAMHSA's webpage concerning LGBT people. Therefore, the remainder of this declaration and the Vaughn index do not address those unchallenged withholdings under Exemption 6. I have reviewed the five

4

documents at issue. The <u>Vaughn</u> index, attached to this declaration, accurately describes the withholdings. Exhibit 8 is the <u>Vaughn</u> index.

13. 5 U.S.C. § 552(b)(5) (Exemption 5) exempts from disclosure: "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." The exemption applies to documents that are normally privileged in the civil litigation context. Consequently, Exemption 5 permits the withholding of all or portions of any documents that are subject to the attorney-client privilege, the attorney work-product privilege, or the deliberative process privilege. In this case, the deliberative process privilege was invoked.

14. The deliberative process privilege protects internal communications that are predecisional and contain staff advice, opinions, and recommendations, which are part of the agency's deliberative decisionmaking process. The final agency decision or position is reflected in the agency responses to Congress that were released to plaintiff on May 11, 2007. A sample response is attached to declaration. <u>See</u> Ex. 9. In this case, we withheld predecisional advice, opinions, or recommendations from five documents.

a. In the first document, we withheld advice provided by the contractor, who was maintaining the SAMHSA website, to SAMHSA, regarding the website and the webpage concerning LGBT people to assist SAMHSA in deciding the content of its website and how to respond to a press inquiry about the website. The contractor gave his advice about the website, and the advice was not meant to solicit website business from SAMHSA at the expense of competing contractors.

b. The second document withheld under Exemption 5 contained the SAMHSA Office of

Communications Director's handwritten notes to himself. They were meant to prepare him for a telephone call he would make to the president of the contracting-company that maintained the SAMHSA website. The notes were a reminder to the OC Director of specific issues that needed to be discussed concerning his views of the contractor's maintenance of the SAMHSA website and about an employee of the contractor. The OC Director did not circulate these personal notes until the search for records concerning this FOIA request. This document contained the author's thought processes and recommendations and edits to himself about what to say to the president of the company maintaining the SAMHSA website.

    c. The third document was partially redacted to remove a SAMHSA employee's advice and recommendations about negotiations with two components of the National Institutes of Health for a possible Memorandum of Understanding between those components and SAMHSA regarding the use of a clearinghouse and about whom from the agency should attend the next management meeting about the clearinghouse.

    d. The fourth and fifth documents that were partially withheld under the deliberative process privilege contained the same two sentences, disclosing advice and recommendations about a proposed agency response to Representative Baldwin, who wrote to Secretary Leavitt, objecting to a decision made by SAMHSA to remove a website concerning LGBT people.

    15. Disclosure of the above information would result in an intrusion into the decisionmaking process of the agency. This intrusion would discourage candid discussion within the agency, thereby undermining the agency's ability to perform its functions. Release of this material would be a deterrent to future free exchanges of information within the agency if agency personnel have to fear the public disclosure of their opinions, advice, analyses, and

6

recommendations. Concern by an agency employee that his or her views and analyses would be publicly disseminated would result in a more cautious, and hence less effective, performance of his or her duties. These effects would damage the decision-making process by stifling and chilling such exchanges of information prior to the adoption of a final position by the agency, or by the government.

16. 5 U.S.C. § 552(b)(6) (Exemption 6) exempts from disclosure: "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." In each instance where information was withheld pursuant to Exemption 6, each piece of information applied to a particular individual. As set forth in the Vaughn index, the information withheld consists of information about a terminated employee of the contractor that maintained the SAMHSA website and a contractor's home and cell phone numbers.

17. In asserting Exemption 6, each piece of information was scrutinized to determine the nature and strength of the privacy interest of any individual whose name or identifying information appeared in the documents at issue. In each instance where information was withheld, the individual had a privacy interest in the information being withheld pursuant to Exemption 6. Disclosure of this information would constitute an invasion of privacy of a terminated employee of a contractor and a current employee of a contractor. In addition, I also examined any public interest in the disclosure of the redacted information. In withholding the information, the individual's privacy interest was balanced against any public interest in disclosure. In each instance where information was withheld, it was determined that the individual's privacy interests outweighed any public interest in disclosure of the withheld

information. Revealing the withheld information could reasonably be expected to cause potential harassment or misuse of the information, particularly since release of this personal information to the requester is a release to the world. Disclosing the information being withheld does not shed light on how SAMHSA performs its statutory duties, because the contractor terminated an employee on its own, without any request from SAMHSA, and the contractor's home and cell phone number have nothing to do with SAMHSA's duties. Similarly, disclosure of the withheld information would reveal nothing or very little about the operations or activities of HHS, or any component thereof. As the privacy interests outweigh any public interest in disclosure, release of this information would constitute a clearly unwarranted invasion of personal privacy.

18. Each of the responsive records was reviewed for segregability, and all reasonably segregable, non-exempt information has been released. A segregability analysis is noted for each document listed in the Vaughn index. For the one fully withheld document, there was no reasonably segregable non-exempt information in the document. Attempts to redact the document left meaningless words and phrases.

I declare under penalty of perjury that the foregoing is true and correct. 28 U.S.C. § 1746. Executed this _13th_ day of June, 2007.


_Jeanette S. Hite_
Jeanette S. Hite

**Vaughn Index of Challenged Documents for**
**Lambda Legal Defense and Educ. Fund v.**
**Substance Abuse and Mental Health Services Administration**

| Doc. # | # of Pages | Description | Withheld Information | Basis for Withholding |
|---|---|---|---|---|
| 1 | 5 | Email string, starting with February 2, 2006, 7:18 p.m., email, from Contractor Lewis Eigen, to Mark Weber, Director of Office of Communications, Substance Abuse and Mental Health Services Administration (SAMHSA), regarding a call from the press about the SAMHSA website and about an employee that was terminated by the contractor, including emails exchanged between them on Feb. 2, 2006 6:57 p.m., 6:36 p.m., and 3:32 p.m. | Most of second page withheld, all of the third page withheld, 1 line, three paragraphs, and home and cell phone numbers on fourth page withheld. | The withheld material is protected by the deliberative process privilege, 5 U.S.C. § 552(b)(5), and a small portion of the document is protected by 5 U.S.C. § 552(b)(6). The withheld material contains recommendations and options from a contractor, who was maintaining the SAMHSA website, about the SAMHSA website, about the webpage concerning lesbian, gay, bisexual, and/or transgender (LGBT) people, and about how to respond to a press inquiry about the website. The final decision of the agency concerning the website is reflected in the April 2006 agency responses to Congress that were released to the requester on May 11, 2007. Information about a terminated employee of the contractor and the home and cell phone numbers of contractor were withheld under 5 U.S.C. § 552(b)(6), because release would cause a clearly unwarranted invasion of personal privacy. All reasonably segregable, non-exempt information has been released. |

1

| 2 | 3 | Undated handwritten notes of Mark Weber, Director of Office of Communications, SAMHSA, regarding SAMHSA webpage concerning LGBT people. | Entire document, which consists of 2 full pages and 1 line of text on third page. | The withheld material is protected by the deliberative process privilege, 5 U.S.C. § 552(b)(5). The withheld material contains author's thought processes and recommendations and edits to himself to prepare him for a telephone call he would make to the president of the contracting-company that maintained the SAMHSA website. The notes were a reminder to the OC Director of specific issues that needed to be discussed concerning his views of the contractor's maintenance of the SAMHSA website and about an employee of the contractor. The OC Director did not circulate these personal notes until the search for records concerning the Freedom of Information Act request at issue in this litigation. The final decision of the agency concerning the website is reflected in the April 2006 agency responses to Congress that were released to the requester on May 11, 2007. There is no reasonably, segregable non-exempt information because all non-exempt information would leave meaningless words or phrases. |

| 3 | 1 | January 18, 2006, 8:48 a.m., email from Charlene Lewis of SAMHSA Office of the Administrator to Michael A. Malden of SAMHSA Center for Mental Health Services, with cc to Mark Weber, Director of Communications at SAMHSA and Lori Frederick of the SAMHSA Office of the Administrator, regarding clearinghouse items. | 8 sentences. | The withheld material is protected by the deliberative process privilege, 5 U.S.C. § 552(b)(5). The withheld material contains advice and recommendations about negotiations with two components of the National Institutes of Health for a possible Memorandum of Understanding between those components and SAMHSA regarding the use of a clearinghouse. The withheld material also contains advice and recommendations about whom from the agency should attend the next management meeting about the clearinghouse. The final decision of the agency concerning the clearinghouse is reflected in the April 2006 agency responses to Congress that were released to the requester on May 11, 2007. All reasonably segregable, non-exempt information has been released. |

| 4 | 1 | Email string, starting with March 1, 2006, 3:45 p.m., email from Matthew Grove, Department of Health and Human Services (HHS), to Rose Shannon, SAMHSA, with cc to Kana Enomoto, Mark Weber, and Serena Griffith of SAMHSA, regarding letter from Tammy Baldwin to Secretary Leavitt, with March 1, 2006 emails exchanged between these staff persons from 3:27 p.m., 1:44 p.m., and 12:46 p.m. on the same subject. | 2 sentences | The withheld material is protected by the deliberative process privilege, 5 U.S.C. § 552(b)(5).  The withheld material contains advice and recommendations about a proposed agency response to Representative Baldwin, who wrote to Secretary Leavitt, objecting to a decision made by SAMHSA to remove a website concerning LGBT people.  The final decision of the agency concerning the website and the response to Congress is reflected in the April 2006 agency responses to Congress that were released to the requester on May 11, 2007.  All reasonably segregable, non-exempt information has been released. |

| 5 | 1 | Email string, starting with March 1, 2006, 1:44 p.m., email from Matthew Grove, HHS, to Rose Shannon, SAMHSA, with cc to Kana Enomoto, Mark Weber, and Serena Griffith of SAMHSA, regarding letter from Tammy Baldwin to Secretary Leavitt, with March 1, 2006, 12:46 p.m., email exchanged between these staff persons on the same subject. | Same 2 sentences as Document No. 4, above. | The withheld material is protected by the deliberative process privilege, 5 U.S.C. § 552(b)(5). The withheld material contains advice and recommendations about a proposed agency response to Representative Baldwin, who wrote to Secretary Leavitt, objecting to a decision made by SAMHSA to remove a website concerning LGBT people. The final decision of the agency concerning the website and the agency response to Congress is reflected in the April 2006 agency responses to that were released to the requester on May 11, 2007. All reasonably segregable, non-exempt information has been released. |

**Weber, Mark (SAMHSA/OA)**

| | |
|---|---|
| **From:** | Lewis Eigen [leigen@shs.net] |
| **Sent:** | Thursday, February 02, 2006 7:18 PM |
| **To:** | Weber, Mark (SAMHSA/OA) |
| **Subject:** | RE: Call |

I'll call him tomorrow AM and give him your name and number.

I will tell him that we are just contractors and that you have information that we are not privy to.

If he is serious, he will probably try and call you tomorrow.  If he was just fishing, he may not.

## Lewis D. Eigen

Mobile Phone: 301 455-8432

 ORC MACRO℠

**From:** Weber, Mark (SAMHSA/OA) [mailto:Mark.Weber@samhsa.hhs.gov]
**Sent:** Thursday, February 02, 2006 6:57 PM
**To:** leigen@shs.net
**Subject:** Re: Call

Lew - I think the best thing to do is have them call me.

Thanks
---------------------------
Sent from my BlackBerry Wireless Handheld

-----Original Message-----
From: Lewis Eigen <leigen@shs.net>
To: Weber, Mark (SAMHSA/OA) <Mark.Weber@samhsa.hhs.gov>
Sent: Thu Feb 02 18:36:01 2006
Subject: RE: Call

Our PR people don't ever respond to press inquiries, except to send out annual reports or press releases.  If anyone from our company does, it has to be Frank or I or one of the other executive officers and we always prefer not to.

However, if we can help in any way, we will be glad to talk with this fellow.  The person who did talk with him merely agreed to pass on his message, which they did and I told you.

3/1/2006



b5 b6

b5 [ ————————————— ] A previous version was on there about a decade ago. During the Clinton Administration we were instructed to "update and expand" the site. This was when Dr. Chavez was the administrator. Dr. Nancy Kennedy was the SAMHSA official who oversaw that function and who provided the direction, guidance, and approvals. Before anything was posted, she had approved every word, and gave direction as to slant, coverage, etc. I am pretty sure that others at SAMHSA reviewed it but I do not know who—SAMHSA records will show that.

b5

b5

The action alternatives are for us to:



A:

B:

C:

D:

E:

b5

b5

3/1/2006

b5

b5

b5

b5

b5

b5

I am available at ~~~~~~~~~ or my cell phone at ~~~~~~~~ Feel free to call up to 11 PM.


Lewis D. Eigen

Mobile Phone: ~~~~~~~~~


From: Weber, Mark (SAMHSA/OA) [mailto:Mark.Weber@samhsa.hhs.gov]
Sent: Thursday, February 02, 2006 3:32 PM
To: leigen@shs.net
Subject: Call


Lew,


Thanks for the call – please have your corporate pr folks call me.


240-276-2130


3/1/2006

Thanks,

Mark

## Lewis, Charlene (SAMHSA/OA)

**From:** Lewis, Charlene (SAMHSA/OA)
**Sent:** Wednesday, January 18, 2006 8:48 AM
**To:** Malden, Michael A. (SAMHSA/CMHS)
**Cc:** Weber, Mark (SAMHSA/OA); Frederick, Lori (SAMHSA/OA)
**Subject:** Clearinghouse miscellany

Michael – A few things to tinker with ....



2. I had asked for the latest set of inventories from the clearinghouse. Do we have copies yet? Electronic works best for me.

3.


Finally, I'm really looking forward to the visit to the call center today .... Despite the ugly weather!  See you there at 1.


Thanks

Charlene

3/30/2007

**GRIFFITH, Serena (SAMHSA/OA)**

**From:**     Grove, Matthew R. (HHS)
**Sent:**     Wednesday, March 01, 2006 1:44 PM
**To:**       Shannon, Rose (SAMHSA/OA)
**Cc:**       Enomoto, Kana (SAMHSA/OA); Weber, Mark (SAMHSA/OA); GRIFFITH, Serena (SAMHSA/OA)
**Subject:**  RE: 022220060034 Letter from Tammy Baldwin to Secretary Leavitt ( due 3/3)

Absolutely.  We'll make the change.  Thanks Rose.

> -----Original Message-----
> **From:** Shannon, Rose (SAMHSA/OA) [mailto:Rose.Shannon@samhsa.hhs.gov]
> **Sent:** Wednesday, March 01, 2006 12:46 PM
> **To:** Grove, Matthew (HHS/OS)
> **Cc:** Enomoto, Kana (SAMHSA/OA); Weber, Mark (SAMHSA/OA); GRIFFITH, Serena (SAMHSA/OA)
> **Subject:** 022220060034 Letter from Tammy Baldwin to Secretary Leavitt (due 3/3)
> **Importance:** High
>
> Matt, SAMHSA is requesting that the letter from Representative Baldwin to Secretary Leavitt be downgraded to the OPDIV signature instead of a letter to be signed by the Secretary.  Rep Baldwin says in her letter that she is objecting to a decision made by SAMHSA to remove a website that sought to provide basic preventative health information to the lesbian, gay, bisexual and transgender population.
>
> The main reason for the request is that this is an operational issue internal to SAMHSA and Mr. Curie should be signing the response.  Mr. Curie has discussed the letter with the Deputy Secretary and he is aware of the subject matter. ██████
5 ████████████████████████████████ Would appreciate any help you can give us on this request.  If you need anything additional from me, please let me know.
>
> Thanks

## GRIFFITH, Serena (SAMHSA/OA)

**From:**     Grove, Matthew R. (HHS)

**Sent:**      Wednesday, March 01, 2006 3:45 PM

**To:**         Shannon, Rose (SAMHSA/OA)

**Cc:**         Enomoto, Kana (SAMHSA/OA); Weber, Mark (SAMHSA/OA); GRIFFITH, Serena (SAMHSA/OA)

**Subject:**   RE: 022220060034 Letter from Tammy Baldwin to Secretary Leavitt ( due 3/3)

Sure...it will come through with a due date of 3/10. Thanks.

-----Original Message-----
**From:** Shannon, Rose (SAMHSA/OA) [mailto:Rose.Shannon@samhsa.hhs.gov]
**Sent:** Wednesday, March 01, 2006 3:27 PM
**To:** Grove, Matthew (HHS/OS)
**Cc:** Enomoto, Kana (SAMHSA/OA); Weber, Mark (SAMHSA/OA); GRIFFITH, Serena (SAMHSA/OA)
**Subject:** RE: 022220060034 Letter from Tammy Baldwin to Secretary Leavitt (due 3/3)

Thank you very much for this change. I will look for the change in swift. Since it will be changed, do you believe we can have a little more time. Thanks

Serena, please look for this change in swift. thanks

**From:** Grove, Matthew R. (HHS)
**Sent:** Wednesday, March 01, 2006 1:44 PM
**To:** Shannon, Rose (SAMHSA/OA)
**Cc:** Enomoto, Kana (SAMHSA/OA); Weber, Mark (SAMHSA/OA); GRIFFITH, Serena (SAMHSA/OA)
**Subject:** RE: 022220060034 Letter from Tammy Baldwin to Secretary Leavitt (due 3/3)

Absolutely. We'll make the change. Thanks Rose.

-----Original Message-----
**From:** Shannon, Rose (SAMHSA/OA) [mailto:Rose.Shannon@samhsa.hhs.gov]
**Sent:** Wednesday, March 01, 2006 12:46 PM
**To:** Grove, Matthew (HHS/OS)
**Cc:** Enomoto, Kana (SAMHSA/OA); Weber, Mark (SAMHSA/OA); GRIFFITH, Serena (SAMHSA/OA)
**Subject:** 022220060034 Letter from Tammy Baldwin to Secretary Leavitt (due 3/3)
**Importance:** High

Matt, SAMHSA is requesting that the letter from Representative Baldwin to Secretary Leavitt be downgraded to the OPDIV signature instead of a letter to be signed by the Secretary. Rep Baldwin says in her letter that she is objecting to a decision made by SAMHSA to remove a website that sought to provide basic preventative health information to the lesbian, gay, bisexual and transgender population.

The main reason for the request is that this is an operational issue internal to SAMHSA and Mr. Curie should be signing the response. Mr. Curie has discussed the letter with the Deputy Secretary and he is aware of the subject matter ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Would appreciate any help you can give us on this request. If you need anything additional from me, please let me know.

Thanks